In re KIDS CREEK PARTNERS, L.P., Debtor.

Bankruptcy No. 94 B 23947.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

April 24, 1998.

David A. Belofsky, Douglas Belofsky, Steven Shamash, Chicago, IL, for Movant.

Neil Wolf, Janet Baer, James R. Edmunds, Schwartz Cooper Greenberger & Krauss, Chicago, IL, for Respondent.

David R. Herzog, Layfer Cohen & Handelsman, Chicago, IL, Trustee.

## MEMORANDUM OPINION ON APPLICATION OF JACKLEEN DEFINI FOR PAYMENT OF ADMINISTRATIVE CLAIM

JACK B. SCHMETTERER, Bankruptcy Judge.

This proceeding relates to a bankruptcy case arising from an involuntary petition filed

on December 5, 1994, pursuant to which an Order for Relief was entered on December 30, 1994. David R. Herzog ("Trustee") was appointed Chapter 7 Trustee. On or about February 15, 1995, the Trustee filed an adversary proceeding against Leighton Holdings, Ltd. ("Leighton"), Cecil McNab ("McNab"), and others seeking, *inter alia*, equitable subordination of its secured claim. David Belofsky and Associates ("Special Counsel") were appointed special counsel to the Trustee to pursue the Adversary proceeding.

During the course of the Adversary, Special Counsel ordered many transcripts from Jackleen DeFini ("DeFini"), one of the court reporters for this Court. On August 26, 1997, Trustee filed an application for payment of an administrative claim of $1,390 on behalf of DeFini.

At this time, the Debtor's bankruptcy estate is administratively insolvent. Currently there appears to be something less than $300,000 remaining in the bankruptcy estate. Pursuant to an order entered December 30, 1994, Leighton holds a superpriority administrative claim on those remaining estate funds far in excess of the amount held. As a result, there is nothing currently in the estate to pay DeFini or any other administrative claimant.

However, pursuant to separate order entered June 12, 1997, discovery sanctions were awarded to the Trustee and against defendant McNab. A monetary sanction in the amount of $2,500 was ordered to be paid by McNab individually to the Trustee, and that was paid. That $2,500 was not subject to Leighton's superpriority claim. On August 19, 1997, an order was entered granting interim compensation to Special Counsel in the amount of $2,500 allowed pursuant to Special Counsel's Second Application for Interim Compensation. That sum was ordered to be paid to Special Counsel of the Trustee from the $2,500 sanction because that sanction fund was not subject to the superpriority order. When the $2,500 was sought by Special Counsel and ordered paid, neither the Trustee nor Special Counsel informed the Court that a debt for court reporting costs and other administrative expenses remained

outstanding. The present issue is whether the $2,500 should be disgorged from Special Counsel and then distributed either to DeFini or pro rata among her and other administrative creditors. The disgorgement issue was raised by the Court *sua sponte* when the Trustee filed his present application, and the Trustee and Special Counsel were given opportunity to brief the question. The Trustee has not sought disgorgement from his counsel and hoped to obtain payment for DeFini by defeating Leighton's superpriority claim to which he had agreed several years ago. That hope has proven fruitless as discussed in the Memorandum Opinion as to Leighton's claim entered this date.

### Jurisdiction

First, it should be noted that a request for disgorgement of interim professional fees does not require an Adversary proceeding. A number of courts, including this Circuit, have reviewed requests for disgorgement without requiring an Adversary proceeding. See *Matter of Taxman Clothing*, 49 F.3d 310 (7th Cir.1995); *In re Gregory*, 214 B.R. 570 (S.D.Tex.1997). Just as an application for professional fees does not require an Adversary, a further review of that application likewise does not necessitate an Adversary proceeding.

This matter properly lies here pursuant to 28 U.S.C. § 157 and Local Rule 2.33(A) of the Northern District of Illinois. Subject matter jurisdiction arises under 28 U.S.C. § 1334(b). Venue is proper under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### Discussion

As stated, the Trustee applies in his present motion for permission to pay an administrative claim for court reporting services utilized by Special Counsel from the office of court reporter DeFini. The Trustee argues that this Court requested a detailed statement of facts to aid in consideration of Defendants' motion for judgment on partial findings at the close of the Trustee's proofs in his Adversary case against Leighton. He claims that, in order to complete his required pleadings, Special Counsel needed and there-

fore ordered transcripts for almost the entire four-week trial. Those transcripts were not ordered by the Court.

DeFini provided the transcripts for which an outstanding debt remains in the amount of $1,390. The Trustee states that incurring this cost was reasonable and necessary for administration of the estate pursuant to 11 U.S.C. § 330. His representation in that regard is accepted and the DeFini administrative claim is allowed in full. However, Leighton's superpriority claim takes precedence over DeFini's administrative claim. Thus, the issue this situation poses is whether Trustee's Special Counsel should disgorge the special $2,500 payment back to the Trustee for redistribution to satisfy DeFini and other unpaid administrative creditors.

■ Disgorgement is appropriate where a Chapter 7 estate is administratively insolvent. *Matz v. Hoseman*, 197 B.R. 635, 639 (N.D.Ill.1996) (award of interim fees is not final and is subject to later review). "Where insufficient assets dictate pro rata distribution among a class of creditors, the court must revisit the propriety of any interim awards in light of the final schedule of priorities and the principle that claimants of one class are entitled to be reimbursed on an equal basis." *In re Anolik*, 207 B.R. 34, 38 (Bankr.D.Mass.1997). While the Bankruptcy Code does not have any specific disgorgement provision, courts have found the power to disgorge within § 105, "which provides the bankruptcy court with the power to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [the bankruptcy code].'" *Guinee v. Toombs (In re Kearing)*, 170 B.R. 1, 7 (Bankr.D.D.C.1994). *See* 11 U.S.C. § 105. In this District, there is no doubt of the authority of a bankruptcy judge to order disgorgement. *Matz v. Hoseman*, 197 B.R. 635, 639 (N.D.Ill.1996) (Aspen, C.J.).

■ As stated, this estate is now administratively insolvent. In addition, the $2,500 paid to Special Counsel on August 19, 1997, was based on allowance of interim fees. As such, it was not final and remains subject to subsequent review and subject to possible disgorgement. *Hoseman*, 197 B.R. at 639 (citing *Matter of Taxman Clothing Co.*, 49

F.3d 310, 312, 314 (7th Cir.1995)). "Interim compensation awards under 11 U.S.C. § 331 are interlocutory and are subject to disgorgement." *Anolik* at 37 (collecting cases). Moreover, an order granting interim compensation is not a final order. Rather, interim allowances are interlocutory in nature and are "always subject to the court's re-examination and adjustment during the course of the case." *Guinee*, 170 B.R. at 5 (citing *In re Callister*, 673 F.2d 305, 307 (10th Cir.1982)).

Here, disgorgement is manifestly appropriate and required to provide pro rata treatment of other unpaid administrative claimants in this insolvent estate.

However, no one administrative claimant is necessarily entitled to the entire $2,500. "To hold otherwise would be to ignore the plain language of § 726(b) and to unjustly award certain administrative claims of professionals a 'superpriority' status that is not contemplated by the Code." *Guinee*, 170 B.R. at 7–8. Thus, the $2,500 will be ordered returned to the Trustee for distribution among the administrative claimants by further order.

■ It should be noted that, prior to receiving the $2,500 payment, Special Counsel was allowed and received interim fees in the total amount of $53,670, and reimbursement of expenses in the total amount of $3,180.65, all from estate assets of the sort now subject to Leighton's superpriority claims. Other bankruptcy professionals, including other attorneys representing the Trustee, received more than $30,000 from estate assets. As long as some administrative claims remain unpaid, those professionals may in effect have received their own administrative superpriority payments. Bankruptcy professionals "are on notice of the potential for disgorgement should the estate be unable to pay all of its administrative expenses." *Hoseman*, 197 B.R. at 640 (citing *In re Metropolitan Elec. Supply Corp.*, 185 B.R. 505, 509 (Bankr.E.D.Va. 1995)). Leighton has argued for disgorgement of the earlier payments, claiming that its superpriority should reach back to recover all estate assets. At this time, no ruling will be made as to whether earlier allowed fees should be disgorged. However, all

funds now held by the Trustee, with exception of the $2,500 discussed here, are subject to Leighton's superpriority and are not available to administrative claimants. Therefore, the $2,500 discussed here will be disgorged from Special Counsel and divided among administrative creditors, including DeFini. Special Counsel and other administrative claimants who have already received payment in part or in full of their administrative claims will not receive at least any additional amounts until and unless other non-superpriority administrative claimants have received a distribution pro rata to theirs. *See* 11 U.S.C. § 726(b) (which mandates pro rata distribution of administrative expenses).

### *CONCLUSION*

Counsel in bankruptcy must be as mindful as counsel in other fields of the need to pay vendors, particularly when resources are low or in jeopardy. Decisions to order transcripts represent a desire to present a Cadillac quality case. Here, such decisions also represented a gamble as to whether the estate assets or Special Counsel's pocketbook would pay the cost. Unhappily, the latter source must be tapped because that is required by the law as well as obvious fairness. After all, the gamble was theirs, and the burden of it should not be imposed on Ms. DeFini and other administrative creditors. The risk and possibility of disgorgement is "part of the bankruptcy landscape" under § 726(b) and is always a possibility. *Matz* at 640. Here it must be ordered.

Special Counsel for the Trustee will therefore be required by separate order to disgorge and pay the subject $2,500 to the Trustee. The Trustee will ascertain all claims heretofore paid and left outstanding or due. An appropriate redistribution of the $2,500 will then be computed and ordered for the benefit of DeFini and other unpaid administrative creditors.